*1098 CARNES, Circuit Judge:
This is another federal habeas statute of limitations case, involving another equitable tolling issue. See generally 28 U.S.C. § 2244(d); Holland v. Florida, — U.S. -, 130 S.Ct. 2549, 177 L.Ed.2d 130 (2010). Jeffrey G. Hutchinson was convicted of four counts of first degree murder for shotgunning to death his girlfriend, Renee Flaherty, and her three children: nine-year-old Geoffrey, seven-year-old Amanda, and four-year-old Logan. Hutchinson v. State, 882 So.2d 943, 948-49 (Fla.2004) abrogated by Deparvine v. State, 995 So.2d 351 (Fla.2008). He was sentenced to life imprisonment for the murder of Renee Flaherty and to death for the murder of each child. Id. at 949. His convictions and sentences were affirmed on direct appeal. Id. at 961. After an evidentiary hearing state collateral relief was denied, and that denial was affirmed by the Florida Supreme Court. Hutchinson v. State, 17 So.3d 696, 702-04 (Fla.2009).
The district court dismissed Hutchinson’s 28 U.S.C. § 2254 petition for federal habeas relief because it was not filed until July 24, 2009, which was three years, nine months, and twenty-four days (or 1,393 days) after the one-year statute of limitations contained in § 2244(d) had run on September 30, 2005. Hutchinson v. Florida, No. 5:09-CV-261-RS, 2010 WL 3833921 (N.D.Fla. Sept. 28, 2010). This is Hutchinson’s appeal from that dismissal.
Under § 2244(d)(1)(A) the one-year period for filing a federal habeas petition starts running on the date “on which the [state court] judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.” But § 2244(d)(2) provides that “[t]he time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted.” In order for that § 2244(d)(2) statutory tolling to apply, the petitioner must file his state collateral petition before the one-year period for filing his federal habeas petition has run. McCloud v. Hooks, 560 F.3d 1223, 1227 (11th Cir.2009); Alexander v. Sec’y, Dep’t of Corr., 523 F.3d 1291, 1294 (11th Cir.2008) abrogated on other grounds by Wall v. Kholi, — U.S. -, 131 S.Ct. 1278, 179 L.Ed.2d 252 (2011); see also Hunter v. Ferrell, 587 F.3d 1304, 1308 n. 3 (11th Cir.2009). Hutchinson’s state collateral petition was not filed until October 20, 2005, which was twenty days after the entire one-year period for filing the federal petition had run on September 30, 2005, and as a result none of the limitations period for filing his federal petition was left to be tolled. From that point on Hutchinson’s hopes for relief were riding all or nothing on his state collateral petition, and the result came up nothing when the Florida Supreme Court affirmed the denial of collateral relief. See Hutchinson, 17 So.3d at 702-04.
Hutchinson recognizes both that his federal habeas petition should have been filed by September 30, 2005, and that because his state collateral petition was not filed until October 20, 2005, he cannot claim statutory tolling under § 2244(d)(2) for any of the time that his state collateral proceeding was ongoing. His sole contention is that he is entitled to equitable tolling. See generally Holland, 130 S.Ct. 2549. Equitable tolling is, well, equitable in nature, and decisions regarding it must be made “on a case-by-case basis” in light of “specific circumstances, often hard to predict in advance,” although we “can and do draw upon decisions made in other similar cases for guidance.” Id. at 2563 (quotation marks omitted). We turn now to the specific facts and circumstances of *1099 this case as well as to the decisions in similar cases for guidance.
The parties agree that the problem in this case arose because the attorneys who filed Hutchinson’s state collateral petition misunderstood the date on which the limitations period began to run at the end of the direct appeal process and, as a result, they miscalculated the filing deadline. Because no petition for writ of certiorari was filed in the United States Supreme Court as part of the direct appeal, the time for filing the federal habeas petition started running upon “the expiration of the time for seeking such review.” 28 U.S.C. § 2244(d)(1)(A). Hutchinson’s attorneys understood that, but they misunderstood when the time for seeking certiorari review of a state court’s judgment expired. They thought that the time for doing so expired ninety days after the Florida Supreme Court issued its mandate on July 22, 2004. See App. A ¶2. Instead, the time actually expired ninety days after the issuance of the Florida Supreme Court’s judgment (the opinion was the judgment), which had happened twenty-one days earlier on July 1, 2004. See Sup.Ct. R. 13.3 (“The time to file a petition for a writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed, and not from the issuance date of the mandate (or its equivalent under local practice).”).
As a result of that misunderstanding, Hutchinson’s attorneys miscalculated the deadline by which they were required to file either Hutchinson’s federal habeas petition or file his state collateral petition in time to statutorily toll the federal limitations period. They believed that they had until October 20, 2005, instead of September 30, 2005, which was the actual deadline.[1] Because they filed Hutchinson’s state collateral petition on October 20, 2005, the § 2244(d)(2) tolling provision did not kick in and when Hutchinson finally filed his federal habeas petition on July 24, 2009, it was three-and-three-quarters years too late.
A petitioner has the burden of establishing his right — if “right” is not too strong a word in the area of equity — to equitable tolling. He must plead or profi fer enough facts that, if true, would justify an evidentiary hearing on the issue. Chavez v. Sec’y, Fla. Dep’t of Corr., 647 F.3d 1057, 1060 (11th Cir.2011). And the allegations supporting equitable tolling must be specific and not conclusory. Id. at 1061. The Supreme Court did say in Holland that although equitable relief is flexible and all the facts and circumstances must be considered, we should “draw upon decisions made in other similar cases for guidance.” Holland, 130 S.Ct. at 2563. We take that statement to mean this is not an area free of rules of law, governed entirely by the chancellor’s foot, but we are instead bound by precedent to the extent that there is precedent.[2]
*1100 Binding precedent has laid down two requirements that a federal habeas petitioner must meet before a court can grant him equitable tolling of the § 2244(d) statute of limitations. In the Supreme Court’s words: “[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way.” Holland, 130 S.Ct. at 2562 (quotation marks omitted); Lawrence v. Florida, 549 U.S. 327, 336, 127 S.Ct. 1079, 1085, 166 L.Ed.2d 924 (2007); see also Chavez, 647 F.3d at 1066, 1068. The Supreme Court has also instructed us that “a garden variety claim of excusable neglect such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling.” Holland, 130 S.Ct. at 2564 (citation and quotation marks omitted); Lawrence, 549 U.S. at 336-37, 127 S.Ct. at 1085 (“Attorney miscalculation is simply not sufficient to warrant equitable tolling, particularly in the postconviction context where prisoners have no constitutional right to counsel.”); see also Chavez, 647 F.3d at 1066.
This case involves, in Holland’s language, “a garden variety claim of excusable neglect,” arising from “a simple miscalculation that leads a lawyer to miss a filing deadline.” See Holland, 130 S.Ct. at 2564 (quotation marks omitted). The attorneys who filed the state collateral petition for Hutchinson misunderstood what § 2244(d)(1)(A)’s “expiration of the time for seeking such review” meant when read against Supreme Court Rule 13.3. The fact that they ought to have known better does not justify equitable tolling.[3] The attorneys who miscalculated the deadline for filing in the Lawrence case did so because they were not aware of well-settled law that should have prevented any confusion on their part. See Lawrence, 549 U.S. at 336-37, 127 S.Ct. at 1085. Yet, the Supreme Court still held that equitable tolling was not justified in that case because “[attorney miscalculation is simply not sufficient to warrant equitable tolling.” Id. at 336, 127 S.Ct. at 1085. If attorney miscalculation, error, or negligence were enough for equitable tolling, the § 2244(d) statute of limitations would be tolled to the brink of extinction because in practically every case where there is a failure to meet the filing deadline an attorney is at fault. See Chavez, 647 F.3d at 1071 (“In virtually every case where the issue of equitable tolling comes up one or more attorneys should have acted with more dispatch, but more than that is required.”).
*1101 Hutchinson argues that more is involved here than simple attorney error or miscalculation. The “more” that he contends is involved is set out in the affidavit that he filed in the district court in response to the motion to dismiss his federal habeas petition as untimely. (That affidavit is reproduced in full as Appendix A to this opinion.) In his affidavit, Hutchinson states that he repeatedly expressed to the two attorneys who were representing him his concern about the statute of limitations, and on September 22, 2005 he told them “point blank and in no uncertain terms to ‘either file my rule 3.851 motion immediately or I will discharge you and file it myself.’ ” App. A ¶ 15. On that occasion, Hutchinson recounts, both attorneys promised him that they “would file the motion on or before September 28, 2005, though they went on to say that we had 90 days after the mandate was issued by the Florida Supreme Court, so the rule 3.851 motion was not actually due until ‘October 20th.’ ” Id. According to Hutchinson, he again told his two attorneys that if they did not file the Rule 3.851 motion “immediately” he would file it himself because he knew that was “the only way [he] could prevent the one-year limitations period from expiring on [his] 2254 petition.” Id. The attorneys “guaranteed” him that they would file the state court motion “no later than September 28, 2005.” Id. But they did not do that. Instead, they filed the state court motion on October 20, 2005.[4]
Hutchinson alleges that but for his attorneys’ promise to file by September 28, 2005 he “would have discharged them and filed a pro se rule 3.851 motion to prevent 28 U.S.C. § 2255(d)(l)’s [sic] one-year limitations period from expiring.” App. A ¶ 16. He attached to his affidavit “facsimiles of the Notice of Pro Se Status and Rule 3.851 Motion that [he] would have filed on September 23, 2005, but for [the attorneys’] promise.” Id. Those two facsimiles are each dated September 23, 2005 and signed by Hutchinson, indicating that he was ready, willing, and able to file his motion to proceed pro se and his Rule 3.851 motion on or soon after that date and would have done so but for his attorneys’ promises, which were not kept.[5]
*1102 Hutchinson knew, at least by October 19, 2005, that his attorneys had not filed his state Rule 3.851 motion by the September 30, 2005 deadline (or the September 28, 2005 deadline, as he had calculated it). We know that Hutchinson knew that because October 19, 2005 is the date Hutchinson signed, under penalty of perjury, the verification on the Rule 3.851 motion (which one of the attorneys filed in state court the next day).[6] Just twenty-seven days earlier he had told his two attorneys that filing the Rule 3.851 motion in state court by September 28, 2005 was necessary to prevent the federal filing deadline from expiring. See App. A ¶ 15. And Hutchinson had already drafted, dated, and had ready to file a complete petition setting out all of the claims that he wanted to raise. Id. ¶¶ 15-16. By simply changing the name of the court in which that petition was to be filed, Hutchinson himself could have filed his federal habeas petition on or soon after October 20, 2005, which would have been just twenty days after the expiration of the one-year limitations period.[7]
Yet Hutchinson did nothing of the sort for nearly four years. He did not file his pro se habeas petition in federal court until July 24, 2009, which was long after the state trial court had denied his Rule 3.851 motion on January 3, 2008, and was also after the Florida Supreme Court had affirmed that denial on July 9, 2009. More to the point, Hutchinson waited to file his federal petition for three years, nine months and five days — a total of 1,374 days — after he learned on October 19, 2005 that his attorneys had missed the deadline for a filing in state court that would have *1103 tolled the federal limitations period. There is nothing in Hutchinson’s affidavit or in his briefs to explain his delay of nearly four years. Nothing.
We need not decide whether Hutchinson has established that an extraordinary circumstance stood in the way of his meeting the § 2244(d) filing deadline, because he has not carried his burden of showing that he pursued his rights diligently. See Holland, 130 S.Ct. at 2562; Lawrence, 549 U.S. at 336, 127 S.Ct. at 1085; see also Chavez, 647 F.3d at 1066, 1068. Although Hutchinson’s affidavit may show that he diligently attempted to have his state collateral motion filed in time to give him the benefit of § 2244(d) statutory tolling, it does not show that once that opportunity was missed he pursued his federal rights diligently. Instead, his affidavit and the other materials he has submitted show that he had in hand a petition that he could have re-labeled and filed pro se in federal court within three weeks after the one-year limitations period ran, but he waited three-and-three-quarter years before he filed a pro se federal habeas petition. That is not reasonable diligence.
Hutchinson’s lengthy delay in filing his pro se federal habeas petition stands in stark contrast to the petitioner’s diligence in the Holland case. The Supreme Court stressed that “the very day that Holland discovered that his AEDPA clock had expired due to [his attorney’s] failings, Holland prepared his own habeas petition pro se and promptly filed it with the District Court.” Holland, 130 S.Ct. at 2565 (emphasis in original). Holland’s filing of his federal habeas petition the day after he learned that “his AEDPA clock had expired due to [his attorney’s] failings” may be “maximum feasible diligence,” id., which is not required. But Hutchinson’s failure to.do anything to get his federal habeas petition filed for nearly four years after he learned that the AEDPA clock had run out due to his attorneys’ miscalculation is not even “reasonable diligence,” which is required, id.
The district court did not err in concluding that Hutchinson was not entitled to equitable tolling of 1,393 days.
AFFIRMED.

. By our calculations, the actual deadline should have been September 29, 2005, because that is one year after September 29, 2004, the date on which the judgment of the state court became final under § 2244(d)(1)(A). For some reason, the district court said and the parties say that the deadline was September 30, 2005. Because the difference makes no difference we will use the September 30, 2005 date, too.

. And it is a good thing that rules of precedent apply here. Even Blackstone, who was something of a fan of equity, warned that:
[T]he liberty of considering all cases in an equitable light, must not be indulged too far; lest thereby we destroy all law, and leave the decision of every question entirely in the breast of the judge. And law, without equity, though hard and disagreeable, is much more desirable for the public good, than equity without law: which would make every judge a legislator, and intro *1100 duce most infinite confusion; as there would then be almost as many different rules of action laid down in our courts, as there are differences of capacity and sentiment in the human mind.
1 William Blackstone, Commentaries *62; see also 1 Joseph Story, Commentaries on Equity Jurisprudence § 19, at 16 (13th ed. 1886) (“If indeed, a Court of Equity in England did possess the unbounded jurisdiction which has been thus generally ascribed to it ... it would be the most gigantic in its sway, and the most formidable instrument of arbitrary power, that could well be devised.”).

. Any implicit criticism by us of Hutchinson's attorneys for their mistake is tempered by awareness that a panel of this Court made exactly the same mistake a year-and-a-half before those two attorneys did. The opinion in Diaz v. Secretary for the Department of Corrections, 362 F.3d 698 (11th Cir.2004), states that “[t]he 90-day period in which Diaz could have filed a petition in the United States Supreme Court expired on June 19, 1997, at which time the clock began to run on the one-year limitation for the filing of habeas petitions.” Id. at 699. The opinion in that case shows, however, that June 19, 1997 was 90 days after the state appellate court's mandate had issued and not 90 days after its opinion had issued, which was 16 days earlier. See id. We do not know if the Diaz opinion confused Hutchinson's counsel or if they were even aware of it. What we do know is that no one is perfect; we all make mistakes.

. In his affidavit Hutchinson states that before the statute of limitations ran he met with attorney Brody three times, App. A ¶¶ 7, 10, 12, with attorney Hazen four times, id. ¶¶ 6, 8, 11, 13, and with both of them on two other occasions, id. ¶¶ 14, 15. He states that during one of his meetings with Brody alone, more than five months before the limitations period ran, Brody was “visibly disoriented and smelled strongly of alcohol,” id. ¶ 12, and during another meeting two-and-a-half months before the limitations period ran Brody was "sweating profusely and smelled of alcohol,” id. ¶ 14. Hutchinson also says that on that later occasion Hazen told him that Brody was “just having a lot of personal problems.” Id. But there is no allegation that Brody's impairment, if any, caused the error in miscalculating the due date. See Chavez, 647 F.3d at 1071 (holding that equitable tolling was not appropriate where “[tjhere are ... no allegations at all that [state post-conviction counsel’s] health had affected his ability to handle the case up to the time he withdrew or that it had prevented him from filing the motion for state post-conviction relief sooner”). Nor has Hutchinson alleged that attorney Hazen, who actually signed and filed the Rule 3.851 motion in state court on October 20, 2005, was ever impaired in any way.

. Hutchinson’s affidavit also states that on three occasions, the last of which was July 14, 2005, he asked his attorneys to file a "shell-brief” in state court in order to prevent the time from running while they investigated his case and prepared the real motion for state collateral relief. App. A ¶¶ 11, 13, 14. But attorney Hazen told him then that a state court "shell brief didn't provide the protection that it used to.” Id. ¶ 11. It appears that Hazen was correct about that. The respondent’s brief in this case informs us that in 2001 Florida’s Rule 3.851 was amended to prohibit the filing of shell motions, see Fla. *1102 R.Crim. P. 3.851(e)(1)(D); Gonzalez v. State, 990 So.2d 1017, 1034 & n. 9 (Fla.2008), and that shell motions are stricken by the Florida courts and no longer can be used to meet filing deadlines. In his reply brief, Hutchinson does not take issue with any of that information.

. Although Hutchinson's affidavit and the date of his signature on the federal habeas petition establish beyond dispute that he knew his attorneys had missed the deadline for filing his state petition, our separately writing colleague asserts that Hutchinson had no reason to file his federal habeas petition until nearly four years later because he relied on his attorneys’ assurances that they were doing what was necessary to protect his federal habeas rights. See Concurring Op. at 1108— 09. That assertion is belied by Hutchinson’s own sworn statements, which establish that he knew his attorneys had missed the deadline, yet for years after realizing that he still made no attempt to file in federal court the collateral petition he had already drafted. However judges may feel about the law applicable to this or any other area, we have no license to rewrite the facts of a case.

. Had Hutchinson done so, the federal district court could have held his federal habeas petition in abeyance until his efforts to secure state collateral relief were completed. See Rhines v. Weber, 544 U.S. 269, 278-79, 125 S.Ct. 1528, 1535, 161 L.Ed.2d 440 (2005). Our colleague's suggestion that a district court might dismiss such a petition without abusing its discretion is contradicted by the only authority she cites for that proposition, which is the Rhines decision. See Concurring Op. at 1108-09 n. 21. The Supreme Court stated in Rhines that:
[I]t likely would be an abuse of discretion for a district court to deny a stay and to dismiss a mixed petition if the petitioner had good cause for his failure to exhaust, his unexhausted claims are potentially meritorious, and there is no indication that the petitioner engaged in intentionally dilatory litigation tactics. In such circumstances, the district court should stay, rather than dismiss, the mixed petition. See Rose v. Lundy, 455 U.S. 509, at 522, 102 S.Ct. 1198, 71 L.Ed.2d 379 (1982) (the total exhaustion requirement was not intended to “unreasonably impair the prisoner's right to relief”). In such a case, the petitioner’s interest in obtaining federal review of his claims outweighs the competing interests in finality and speedy resolution of federal petitions.
Rhines, 544 U.S. at 278, 125 S.Ct. at 1535.